1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS LANGER,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>U.S. GREEN TECHNOLOGIES, INC., a California corporation; and DOES 1-10,<br><br>　　　　　Defendants. | Case No.: 3:20-cv-01717-BEN-BGS<br><br>**ORDER GRANTING IN PART PLAINTIFF'S REQUEST FOR ADDITIONAL TIME TO SERVE DEFENDANT**<br><br>**[ECF No. 3]** |

**I.   INTRODUCTION**

Plaintiff Chris Langer ("Plaintiff") brings this action for violations of (1) the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), and (2) Unruh Civil Rights Act, Civ. Code, § 51, *et seq.* ("UCRA"), against Defendant U.S. Green Technologies, Inc., a California corporation ("Defendant"). ECF No. 1.

Before the Court is Plaintiff's Application for Additional Time to Serve Defendants (the "Application"). ECF No. 3. After considering the papers submitted, supporting documentation, and applicable law, the Court **GRANTS** Plaintiff's Application in part. Plaintiff's request was for additional time without specifying the amount of time sought. The Court grants Plaintiff an additional thirty (30) days from his original deadline to serve Defendant (e.g., December 1, 2020) but cautions that Plaintiff must use that time to exercise reasonable diligence and serve Defendant by **January 1, 2021**. Further, for the

reasons outlined below, the Court, *sua sponte*, declines to exercise supplemental jurisdiction over Plaintiff's state law claim for relief.

## II. BACKGROUND

### A. Statement of Facts

Plaintiff alleges that he is a disabled individual and a member of a protected class of persons under the ADA. ECF No. 1 at 1, ¶ 1. He alleges that he suffers from Delayed Endolymphatic Hydrops, which has caused permanent partial hearing loss and requires him to utilize a variety of assistive listening devices in his day to day life, including hearing aids and headphones. *Id.* at 1-2, ¶ 1. When consuming audio content such as movies or tutorials on the internet, he turns on closed captioning in order to comprehend all of the content. *Id.* at 2, ¶ 1.

Plaintiff alleges that Defendant owns and operates throughout California, including in storefronts in San Diego County in August 2020. *Id.* at 2, ¶ 2. He further pleads that Defendant operates a website with a root domain of: https://www.usgreenenergy.com/about, and all related domains, sub-domains and/or content contained within it (the "Website"). *Id.* at 2, ¶ 4. Plaintiff complains that in August 2020, he visited the Website to shop and view video content but "discovered that the videos lacked closed captioning, which made him unable to fully understand and consume the contents of the videos." *Id.* at 2-3. Plaintiff alleges (1) he has been denied full use and enjoyment of Defendant's goods and services; (2) the failure to provide an accessible website created difficulty and discomfort for him; and (3) if the Website becomes compliant, he will return to avail himself of its goods and/or services as well as to determine compliance. *Id.* at 4-5.

### B. Procedural History

On September 2, 2020, Plaintiff filed his complaint alleging claims for relief for violations of (1) the ADA and (2) UCRA. ECF No. 1. He seeks (1) injunctive relief under the ADA, (2) a statutory penalty of $4,000.00 under the UCRA for each offense, and (3) reasonable attorney fees, litigation expenses, and costs of suit, pursuant to section 52 of the UCRA. *Id.* at 7:12-8:2.

## III. <u>LEGAL STANDARD</u>

"The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service." FED. R. CIV. P. 4(c)(1). "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." FED. R. CIV. P. 4(m); *see also* S.D. Cal. Civ. R. 41.1(a) (providing that "[a]ctions or proceedings which have been pending for more than six months, without any proceeding or discovery having been taken therein during such period, may, after notice, be dismissed by the court for want of prosecution"); *States S. S. Co. v. Philippine Air Lines*, 426 F.2d 803, 804 (9th Cir. 1970) (affirming "[t]hat a court has power to dismiss an action for want of prosecution on its own motion, both under Rule 41(b), Fed. R. Civ. P., or under its local rule").

## IV. <u>DISCUSSION</u>

### A. <u>Application for Additional Time to Serve Defendants</u>

Plaintiff argues that he has attempted to serve Defendant at its mailing addresses, but the process server was unable to locate Defendant there. ECF No. 3-1 at 3:1-3. Plaintiff further states that following the failed personal service attempts, he mailed notices of acknowledgment and receipt (the "NOA") to the same address, but they were not returned. *Id.* at 3:4-7. Next, Plaintiff alleges that his attorney e-mailed the NOA to the available e-mail ID, but it was also not returned. *Id.* at 3:8-12. Plaintiff conclusorily alleges that this constitutes diligence and warrants an extension of time. *Id.* at 3:13-16.

Reasonable diligence has been held to require "[t]wo or three attempts to personally serve a defendant at a proper place." *Rodriguez v. Cho*, 236 Cal. App. 4th 742, 750 (2015). In addition to attempting personal service, courts also require attempts to serve the defendant by at least one other method. *See*, *e.g.*, *Donel, Inc. v. Badalian*, 87 Cal. App. 3d 327, 334 (1978) (holding that where an attorney only employed one method to locate a

defendant, the attorney had not exercised reasonable diligence as a matter of law prior to applying to the court for permission to serve by publication); *accord Stafford v. Mach*, 64 Cal. App. 4th 1174, 1183 (1998), *as modified on denial of reh'g* (July 8, 1998) (upholding service of process where "a process server . . . made six attempts at personal service at Mach's residence," and "[o]n the sixth attempt . . . the server 'announced drop service' and left the papers with him" while mailing the summons and complaint to the same address two days later). Other attempts may include "[a] number of honest attempts to learn defendant's whereabouts or his address" by means of (1) "inquiry of relatives" and (2) "investigation of appropriate city and telephone directories, [voter registries, and assessor's office property indices situated near the defendant's last known location]." *Watts v. Crawford*, 10 Cal. 4th 743, 749, n. 5 (1995) (noting that "[t]hese are likely sources of information, and consequently must be searched before resorting to service by publication"); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) (reiterating that "when notice is a person's due, process which is a mere gesture is not due process"); *Flores v. Kmart Corp.,* 202 Cal.App.4th 1316, 1330 (2012) (finding that "[i]f a creditor's identity is known or reasonably ascertainable, service by publication does not comply with the Fourteenth Amendment due process clause notice requirement—actual notice is constitutionally required").

For example, in *Giorgio v. Synergy Mgmt. Grp., LLC*, 231 Cal. App. 4th 241, 248–49 (2014), the California Court of Appeal affirmed the trial court's conclusion that the complaint could not be served personally or by mail where the plaintiff (1) conducted a search for any addresses associated with the defendant; (2) performed a search online and was able to locate another address associated with the defendant; (3) attempted to serve the defendant by mail at the newly located address "but received a 'Return to Sender Unclaimed' envelope from the United States Postal Service"; (4) verified with the United States Postal Service that the defendant still received mail at the newly located address; and (5) unsuccessfully attempted personal service seven times, using two different process services, at the newly located address.

Based on the date Plaintiff filed his complaint, he needed to effectuate service of process by December 1, 2020 in order to comply with Rule 4(m) of the Federal Rules of Civil Procedure. Although not contained with Plaintiff's Application, the Court takes judicial notice of the fact that the California Secretary of State shows that the Agent for Service of Process for U.S. Green Energy Technologies, Inc. is Alex J. Saenz, who is located at 10070 Carroll Canyon Road, San Diego, California 92131 (the "Registered Agent Address"). *See*, *e.g.*, FED. R. EVID. 201(c)(1) (allowing courts to take judicial notice *sua sponte*); *L'Garde, Inc. v. Raytheon Space and Airborne Sys.*, 805 F. Supp. 2d 932, 937-38 (C.D. Cal. 2011) (taking judicial notice of records from the California Secretary of State website). The Court notes that Plaintiff's Application discusses (1) eight attempts at personal service, including six attempts at the Registered Agent Address and two attempts 15575 Garden Road, Poway, California 92064, ECF No. 3-3 at 1-2; (2) one attempt at mailing the NOA to Registered Agent Address, ECF No. 3-4 at 1-3; and (3) e-mailing the NOA to one e-mail address: ajsaenz@usgreensolar.com, ECF No. 3-5 at 1. However, the Application does not advise whether Plaintiff: (1) received anything in the mail advising that the mailings were "Returned to Sender Unclaimed," *Giorgio*, 231 Cal. App. 4th at 248-49; (2) performed online searches to locate Defendant's address or cross-checked the Registered Agent Address with the address contained on Defendant's website, *see id.* (upholding service of process where the plaintiff, among other efforts, conducted a search online for addresses associated with the defendant); (3) investigated appropriate directories, such as the Secretary of State, *Watts*, 10 Cal. 4th at 749, n. 6; and/or (4) tried calling Defendant for an address. In light of the eight attempts at personal service, the Court grants an additional thirty (30) days to serve Defendant but cautions Plaintiff that he must use those thirty (30) days to undertake true reasonable diligence.

Finally, the Court notes that Plaintiff has named doe defendants in this case. The FRCP neither authorize nor prohibit the use of fictitious parties; however, FRCP 10 does require a plaintiff to include the names of all parties in his complaint. *See Keavney v. Cty. of San Diego*, No. 319CV01947AJBBGS, 2020 WL 4192286, at *4-5 (S.D. Cal. July 21,

2020) (Battaglia, J.) (citing FED. R. CIV. P. 10(a)). Plaintiff's complaint includes allegations against Does 1 through 10. Naming doe defendants further implicates Rule 4 of the FRCP requiring service of the complaint. *Id.* (noting that "it is effectively impossible for the United States Marshal or deputy marshal to fulfill his or her duty to serve an unnamed defendant"); *Finefeuiaki v. Maui Cmty. Corr. Ctr. Staff & Affiliates*, 2018 WL 3580764, at *6 (D. Haw. July 25, 2018) (same). "A plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege specific facts showing how each particular doe defendant violated his rights." *Keavney*, 2020 WL 4192286 at *4-5. Where a "[p]laintiff fails to link any particular constitutional violation to any specific, individual state actor," or seeks "to even minimally explain how any of the unidentified parties he seeks to sue personally caused a violation of his constitutional rights," the court must dismiss those individuals, especially when they have not been served. *See, e.g.*, FED. R. CIV. P. 4(m) (providing that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."); *see also* S.D. Cal. Civ. R. 41.1(a); *Keavney*, 2020 WL 4192286 at *4-5 (dismissing the plaintiff's first amended complaint). Thus, all doe defendants are dismissed *without prejudice* for want of prosecution pursuant to Rule 4(m). As such, if Plaintiff does not move to amend the complaint to name the doe defendants or execute service of the aforementioned doe defendants, they will be dismissed by Plaintiff's extended service of process deadline of January 1, 2021.

### B. <u>Supplemental Jurisdiction</u>

"Federal courts are *required* sua sponte to examine jurisdictional issues such as standing." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) (internal quotations omitted). Accordingly, "[t]he propriety of exercising supplemental jurisdiction can be raised by the parties or sua sponte by the courts," *Carne v. Stanislaus Cty. Animal Servs. Agency*, 445 F. Supp. 3d 772, 774-75 (E.D. Cal. 2020), so long the district court provides reasoning "for the decision to decline to exercise supplemental

jurisdiction," *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001, n. 3 (9th Cir.) (en banc), *supplemented*, 121 F. 3d 714 (9th Cir. 1997), *as amended* (Oct. 1, 1997). Thus, even where a plaintiff establishes standing sufficient to make the court's exercise of jurisdiction over federal claims appropriate, the court retains discretion over whether to exercise supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a). *See also Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 421 (9th Cir. 1991) (noting that "[p]endent jurisdiction [over state law claims] exists where there is a sufficiently substantial federal claim to confer federal jurisdiction, and a common nucleus of operative fact between the state and federal claims.") District courts may decline to exercise supplemental jurisdiction over related claims where (1) the related "claim raises a novel or complex issue of State law," (2) "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," (3) "the district court has dismissed all claims over which it has original jurisdiction," or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). "The decision to retain jurisdiction over state law claims is within the district court's discretion, weighing factors such as economy, convenience, fairness, and comity." *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995). Further, district courts do not need to "articulate why the circumstances of [the] case are exceptional" to dismiss state-law claims pursuant to 28 U.S.C. section 1367(c)(1)-(3). *See San Pedro Hotel Co., Inc. v. City of L.A.*, 159 F.3d 470, 478-79 (9th Cir. 1998)).

Where a plaintiff brings related state law claims in federal court, as is the case here, courts must balance the efficiency of exercising supplemental jurisdiction over related state law claims caused by the preservation of judicial resources with the principles of comity and fairness. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (noting that where "state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals"). "Pendent jurisdiction [over state law claims] exists where there is a sufficiently substantial federal

claim to confer federal jurisdiction, and a common nucleus of operative fact between the state and federal claims." *Gilder*, 936 F.2d at 421.  However, comity represents a valid reason for district courts to decline exercising supplemental jurisdiction where a case involves strong reasons to have state courts interpret state law or the plaintiff has engaged in forum shopping.  *Org. for Advancement of Minorities with Disabilities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1132 (S.D. Cal. 2005).

Since the decision in *Schutza v. Cuddeback*, 262 F. Supp. 3d 1025 (S.D. Cal. 2017) (Bashant, J.) declining the exercise of supplemental jurisdiction over related state law claims in an ADA case, the tide has changed and over 931 cases have favorably cited the decision rejecting supplemental jurisdiction. *Langer v. Honey Baked Ham, Inc.*, No. 3:20-CV-1627-BEN-AGS, 2020 WL 6545992, at *7 (S.D. Cal. Nov. 6, 2020).  As a result, almost every district judge in the Southern District has declined to exercise supplemental jurisdiction over supplemental state law claims in similar cases alleging violations of the ADA and UCRA.  *See id.* (collecting cases).  Thus, courts within this district agree that they should decline supplemental jurisdiction where a plaintiff appears to be filing suit in federal court for the purpose of circumventing California state law.

Here, Plaintiff's federal claims arise under the ADA, while the state law claims arise under the UCRA.  As detailed below, in accordance with this district, this Court declines exercising supplemental jurisdiction because (1) state law claims predominate, (2) comity favors having the state court exercise jurisdiction over the state law claims, and (3) compelling interests favor discouraging forum-shopping.

First, in light of the remedies provided under the federal and state laws, the state law claims predominate.  Plaintiff's claims arising under California's UCRA provide more expansive remedies than the claims brought under the ADA, and Plaintiff is pursuing remedies under both laws. For example, California provides greater protection than the ADA by allowing recovery of money damages, *see Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1131 (9th Cir. 2002), while "the only remedy available under the ADA is injunctive relief," *see Feezor v. Tesstab Operations Grp., Inc.*, 524 F. Supp.

2d 1222, 1224-25 (S.D. Cal. 2007) (Lorenz, J.); *Wander v. Kaus,* 304 F.3d 856, 858 (9th Cir. 2002)). As a result, the UCRA substantially predominates over the ADA claim because the ADA claim "appears to be a second claim included to justify filing the complaint in this Court, rather than a necessary (let alone predominant) claim in this lawsuit." *Brooke v. Crestline Hotels & Resorts LLC.*, No. 20-cv-301-CAB-AGS, 2020 U.S. Dist. LEXIS 34001, at *3 (S.D. Cal. Feb. 25, 2020).

Second, comity favors declining supplemental jurisdiction because the federal and state law claims may require different proof, and the state law claims are subject to a heightened pleading standard. "[I]n 1992, the California Legislature amended California Civil Code Section 51 and added a provision that a defendant violates the Unruh Act whenever it violates the ADA." *Feezor*, 524 F.Supp.2d at 1224-25 (citing C<small>IV</small>. C<small>ODE</small> § 51(f) ("A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (P.L. 101–3361) shall also constitute a violation of this section."). Thus, a violation of the ADA violates the UCRA, but a violation of the UCRA does not necessarily violate the ADA. Further, another important distinction between the federal and state law claims is that while a violation of the ADA does not require intentional discrimination, a claim under the UCRA may require such an intent. *Schutza v. McDonald's Corp.*, 133 F. Supp. 3d 1241, 1247 (S.D. Cal. 2015) (Hayes, J.). Thus, intent to discriminate would only be relevant to the Plaintiff's UCRA discrimination claims and would require application of state law standards. *See, e.g.*, *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 846 (9th Cir. 2004) ("It is undisputed that a plaintiff need not show intentional discrimination in order to make out a violation of the ADA.") "When federal courts consider claims under state law, they are to apply federal procedural law and state substantive law." *O'Campo v. Chico Mall, LP*, 758 F.Supp.2d 976, 984-85 (E.D. Cal. 2010) (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938)). Here, given various issues of proof require application of state law, comity favors having a state court, familiar with such standards, resolve those issues.

Third, compelling interests of comity as well as discouraging forum shopping

support this Court's decision to decline exercising supplemental jurisdiction over the UCRA claims. *See Gibbs*, 383 U.S. at 726 (holding that comity is a factor to be considered before exercising supplemental jurisdiction). "California has a strong interest in protecting its citizens and businesses from abusive litigation and also in preventing its own laws from being misused for unjust purposes." *Brooke v. Suites LP*, No. 3:20-CV-01217-H-AHG, 2020 WL 6149963, at *5–6 (S.D. Cal. Oct. 19, 2020) (Huff, J.) (declining supplemental jurisdiction over the plaintiff's UCRA claim "because it substantially predominates over her federal claim under the ADA and exceptional circumstances favor dismissal, including the Court's interests in comity and discouraging forum-shopping"). "In 2012, California adopted heightened pleading requirements for disability discrimination lawsuits under the Unruh Act, including provisions requiring high-frequency litigants to verify and specify their allegations." *Cuddeback*, 262 F. Supp. 3d at 1031-32 (citing CAL. CODE CIV. PROC. § 425.50). Under this standard, "[e[xcept in complaints that allege physical injury or damage to property, a complaint filed by or on behalf of a high-frequency litigant" must state: (1) "[w]hether the complaint is filed by, or on behalf of, a high-frequency litigant"; (2) "the number of complaints . . . alleging a construction-related accessibility claim that the high-frequency litigant has filed during the 12 months prior to filing the complaint"; and (3) "the reason the individual was in the geographic area of the defendant's business." CAL. CODE CIV. PROC. § 425.50(a)(4) (noting that "high-frequency litigant" has the same meaning as set forth in subdivision (b) of Section 425.55"); *see also* CAL. CODE CIV. PROC. § 425.55(b) (defining a "high-frequency litigant" as either a plaintiff or attorney "who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation"). "The purpose of these heightened pleading requirements is to deter baseless claims and vexatious litigation." *Cuddeback*, 262 F. Supp. 3d at 1031. In 2015, "[t]he Unruh Act was amended again . . . to implement additional procedural requirements for 'high-frequency litigants,'" requiring individuals who have filed more than 10 accessibility-related complaints in the previous years, like Plaintiff, "to

pay additional filing fees and plead even more specific information in their complaints, such as 'the reason the individual was in the geographic area of the defendant's business.'" *Schutza v. Alessio Leasing, Inc.*, No. 18CV2154-LAB (AGS), 2019 WL 1546950, at *3 (S.D. Cal. Apr. 8, 2019) (Burns, Chief J.) (declining to exercise supplemental jurisdiction over the plaintiff's state law claim under the UCRA in the interests of comity and dismissing that claim without prejudice) (citing CAL. CIV. PROC. CODE § 425.50(a)(4)(A) (effective October 10, 2015)). "Unfortunately for California, its courts rarely get to interpret the meaning and application of these provisions because creative plaintiffs are able to evade the heightened standards by bootstrapping an Unruh Act claim to a federal ADA claim, taking advantage of the lower pleading standards that come with it." *Id.* While there is nothing *per se* improper with a plaintiff's desire to proceed in federal court, there appears to be no reason to do so when "[t]he only relief available under the ADA is injunctive relief, which can also be secured in state court." *Id.* "Thus, 'it would be improper to allow Plaintiff to use the federal court system as a loophole to evade California's pleading requirements.'" *Suites LP*, 2020 WL 6149963, at *5–6; *see also Org. for Advancement of Minorities with Disabilities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1132 (S.D. Cal. 2005) ("Because a legitimate function of the federal courts is to discourage forum shopping and California courts should interpret California law . . . compelling reasons exist to decline supplemental jurisdiction").

In *Schutza v. Cuddeback*, this district court held that the plaintiff's state law claim substantially predominated over his ADA Title III claim, and as such, judicial economy, convenience, fairness, and comity warranted the court declining supplemental jurisdiction over the UCRA claims. 262 F. Supp. 3d at 1027-32. Mr. Schutza,[1] like Plaintiff, is a

---

[1] Scott Schutza, like Plaintiff, is also a "frequent flyer" in the Southern District, who notably is also represented by Plaintiff's counsel, Potter & Handy, LLP. Some courts have noted that repeated actions filed by the same plaintiffs and counsel call into question the integrity of the bar, injures the public's view of the courts, and most importantly, creates backlash against the disabled, "who rely on the ADA as a means of achieving equal access." *Molski v. Mandarin Touch Rest.*, 359 F. Supp. 2d 924, 937 (C.D. Cal. 2005), *aff'd*

paraplegic who uses a wheelchair for mobility and filed a lawsuit alleging "he was unable to access or use the property because of various access barriers, including barriers in the parking lot, at the entrance door, in the establishment itself, and in the restroom area." *Id.* at 1027-28. Also like Plaintiff, Mr. Schutza filed suit seeking monetary damages under the Unruh Act and injunctive relief under the ADA. *Id.*

The *Cuddeback* court noted that PACER records revealed that Mr. Schutza had (1) been a plaintiff in 127 cases as of March 27, 2017 alleging disability discrimination and (2) settled 56 disability cases since 2015. 262 F. Supp. 3d at 1031, n. 4-5. It reasoned that "[a]s a high-frequency litigant primarily seeking relief under state law, . . . it would be improper to allow Plaintiff to use federal court as an end-around to California's pleading requirements" by exercising supplemental jurisdiction. *Id.* The court also agreed with the defendants' "contention that Plaintiff is engaging in forum-shopping by bringing his action in federal court and attempting to avoid California's heightened pleading requirements for disability discrimination claims." *Id.* at 1031 ("It is unclear what advantage—other than avoiding state-imposed pleading requirements—Plaintiff gains by being in federal court since his sole remedy under the ADA is injunctive relief, which is also available under the Unruh Act"); *see also Hanna v. Plumer*, 380 U.S. 460, 467-68 (1965) (providing that federal courts may take measures to discourage forum-shopping); *Brick Oven*, 406 F.Supp.2d at 1132 (noting that "[b]ecause a legitimate function of the federal courts is to discourage forum shopping and California courts should interpret California law").

As another example, in *Rutherford v. Leal*, the Court recognized that the plaintiff's "ADA and Unruh Act claims arise out of the same facts and require application of similar standards, and that exercising supplemental jurisdiction would allow these claims to be heard together in federal court." No. 3:20-CV-0688-GPC-RBB, 2020 WL 5544204, at *4-5 (S.D. Cal. Sept. 16, 2020). However, the court noted that "exercising jurisdiction over

---

*sub nom. Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047 (9th Cir. 2007), and *vacated in part on other grounds in* No. 2:04-CV-00450-ER, 2013 WL 6571126 (C.D. Cal. Nov. 18, 2013).

-12-

Plaintiff's Unruh Act claim would undermine the procedures established for hearing such claims in California." *Id.* This was because "[i]t would be unfair to allow Plaintiff to enjoy 'those parts of California law that benefit him while disallowing the parts purposefully enacted to protect Defendants.'" *Id.* Thus, the Court found that "California's enhanced pleading requirement for high frequency litigants like Plaintiff is a compelling reason to decline the exercise of supplemental jurisdiction in this case." *Id.* It also noted that the state law claims predominated over the federal claims because the remedies and proof are different in ADA and UCRA claims. *Id.* at *4-5. "A court may dismiss state law claims when 'in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought,' the state law claims substantially predominate over the federal claims." *Id.* at *4. It reasoned that other "district courts have found plaintiffs' state law claims to predominate over their federal ADA claim where they seek significant damages under state law and allege legal theories applicable only to state law claims." *Id.* The court concluded by declining supplemental jurisdiction and finding the UCRA claim substantially predominated over the ADA claim "[i]n light of the potential for Plaintiff to seek far greater state law damages and his inclusion of a state-law specific legal theory." *Id.* at *5.

Here, Plaintiff's current complaint, like the complaints in *Cuddeback* and *Leal*, failed to include allegations by Plaintiff and his counsel regarding their status as high-volume litigants that would have otherwise been required under California law. *See* ECF No. 1. This Court recently took judicial notice of the fact that Plaintiff "Chris Langer is a plaintiff in 1,498 federal cases." *See Langer v. Kiser*, No. 318CV00195BENNLS, 2020 WL 6119889, at *3 (S.D. Cal. Oct. 16, 2020) (noting that "PACER shows a total of 1,498 cases in which the plaintiff is named 'Chris Langer' throughout all courts on PACER"). Since the court took judicial notice of that fact, Public Access to Court Electronic Records ("PACER") shows that Plaintiff has filed an additional ten lawsuits. Thus, the Court takes judicial notice of the fact that as of the date of this order, PACER shows a total of 1,513 cases in which the plaintiff is named Chris Langer. *See, e.g.*, FED. R. EVID. 201(b)(1)-(2) (providing that at any stage of a proceeding, courts may take judicial notice of (1) facts

not subject to reasonable dispute and "generally known within the trial court's territorial jurisdiction" and (2) adjudicative facts, which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290, fn. 1 (9th Cir. 1996) (taking judicial notice of court records).  Accordingly, the Court, like the *Cuddeback* and *Leal* courts, questions the propriety of exercising supplemental jurisdiction over the state law claims where Plaintiff has failed to comply with California's heightened pleading requirements for high-volume litigants, like Plaintiff.  Given Plaintiff could seek the more rewarding remedies (e.g., money damages) in state court as well as injunctive relief (the only relief available in federal court), filing in federal court seems to be strategic avoidance of the heightened-pleading requirements that would otherwise need to be met in state court.  *See, e.g.*, *Alessio Leasing*, 2019 WL 1546950, at *4 (noting that "there is no relief available to Schutza in federal court that could not be secured in state court").  Further, just as the *Leal* court noted that different remedies require different proof, Plaintiff here likewise seeks different remedies that require different proof.

Thus, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims brought under the UCRA and dismisses those claims *without prejudice* to Plaintiff re-filing them in state court.  *See, e.g.*, *Molski v. Foster Freeze Paso Robles*, 267 F. App'x 631, 633 (9th Cir. 2008) (noting that although a court may decline to exercise supplemental jurisdiction over state law claims, when it does, it must dismiss those claims without prejudice).

## V. CONCLUSION

For the above reasons, the Court orders as follows:

1. **GRANTS IN PART** Plaintiff's Application by granting Plaintiff an additional thirty (30) days to serve Defendant.  Plaintiff must serve Defendant as well as any doe defendants by January 1, 2021.

2. If the doe defendants are not served by January 1, 2021, they will be dismissed.

3. The Court declines to exercise supplemental jurisdiction over the claims brought pursuant to Plaintiff's second claim for relief under the UCRA. All claims pertaining to violation of the UCRA are dismissed *without prejudice* to being refiled in a California superior court.

**IT IS SO ORDERED.**

DATED: December 14, 2020

**HON. ROGER T. BENITEZ**
United States District Judge